IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case No. 3:06 CR 474 - 1 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| José Loreto Mariscal | |
| Defendant. | |

### INTRODUCTION

*Pro se* Defendant José Mariscal, a prisoner in federal custody, filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, claiming he received ineffective assistance of counsel. For the reasons stated below, Defendant's Motion is denied.

### BACKGROUND

On direct appeal, the Sixth Circuit accurately described the facts of Defendant's case:

[Defendant] pleaded guilty, without a plea agreement, to one count of conspiracy to distribute and possess with intent to distribute 5 or more kilograms of cocaine. Three other members of the conspiracy – Frank Badgett, Gustavo Rivas, Jr., and Ramon Cardenas – reached plea agreements with the government in exchange for their testimony and assistance. Badgett admitted in his agreement that he was responsible for at least 50 but less than 150 kilograms. Rivas admitted he was responsible for at least 15 but less than 50 kilograms. Cardenas admitted that he was responsible for at least 5 but less than 15 kilograms.

The three co-conspirators testified at [Defendant's] sentencing hearing. Badgett testified that he began purchasing large quantities of cocaine from [Defendant] in late 2001 or early 2002. Badgett stated that, by mid-2002, [Defendant] was distributing a total of approximately 20 kilograms of cocaine per month to Rivas, Walter Holston, and himself. Badgett testified that the quantities "picked up" between 2002 and 2006, to a peak of approximately 20 kilograms per week sometime in 2005 or 2006. Badgett

himself obtained approximately 30 to 40 kilograms per month from [Defendant] starting in April 2005. Badgett further testified that [Defendant] told him two or three days before Badgett was arrested that he had obtained a shipment of 121 kilograms of cocaine. Badgett estimated that, in total, he personally received approximately 150 to 200 kilograms of cocaine from [Defendant].

Rivas testified that he stored large quantities of cocaine at his house for [Defendant] from 2003 to 2006. Rivas testified that couriers delivered 5- or sometimes 10-kilogram loads of cocaine from [Defendant's] home in Chicago, Illinois to Rivas's home in Toledo, Ohio. Rivas estimated that he received between 100 and 150 kilograms of cocaine from [Defendant] from 2004 to 2006, but he conceded having difficulty remembering dates, and said he did not have a clear memory of how much cocaine was involved in each delivery or of how many deliveries there were.

Cardenas testified that he transported cocaine for [Defendant]. [Defendant] told Cardenas by phone "where to go, where to pick up[,] and where to drop the loads [.]" Cardenas specifically recalled three loads of 80, 87, and 121 kilograms of cocaine that he picked up, at [Defendant's] direction, from a truckers' garage in Kankakee, Illinois. The 121-kilogram load was broken down into five laundry bags of 20 kilograms and one bag of 21 kilograms of cocaine. Cardenas then delivered the 21-kilogram bag to Badgett and Holston in Toledo.

After hearing the co-conspirators' testimony, the district court found [Defendant] responsible for 150 kilograms or more of cocaine. The court thereafter sentenced [Defendant] to 300 months' incarceration.

*U.S. v. Mariscal*, 326 F. App'x 359, 360-61 (6th Cir. 2009).

Defendant filed a timely appeal, the sole argument being that the evidence did not support the district court's finding that Defendant was responsible for 150 or more kilograms of cocaine, because that finding was based on the testimony of co-defendants who had stipulated to lesser drug quantities in their individual plea agreements. The Sixth Circuit affirmed the district court's finding. *Id.* at 361-62.

Defendant then timely filed the instant 28 U.S.C. § 2255 Motion to Vacate (Doc. No. 242) alleging he received ineffective assistance of counsel at sentencing because his attorney failed to raise disparity of co-defendant sentences when the court reviewed the 18 U.S.C. § 3553(a) factors.

**STANDARD OF REVIEW**

Ordinarily, to prevail on a Section 2255 motion alleging constitutional error, the defendant must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Watson v. U.S.*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). In a petition for collateral review under Section 2255 seeking to vacate a sentence, a prisoner must clear a significantly higher hurdle than would exist on direct appeal. *McNeil v. U.S.*, 72 F. Supp. 2d 801, 803 (N.D. Ohio 1999). The defendant has the burden of sustaining his contentions by a preponderance of the evidence. *Id.*

However, in the case where defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted on these claims, to raise them in a Section 2255 motion he also must show "either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado v. U.S.*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *Bousley v. U.S.*, 523 U.S. 614, 622 (1998)). This is so because "Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process." *Id.* (citing *U.S. v. Frady*, 456 U.S. 152, 167-68 (1982)).

**ANALYSIS**

*Procedural Default*

As an initial matter, Defendant's claim is procedurally defaulted because he did not raise ineffective assistance of counsel on appeal. Defendant's sole argument on direct appeal was that the district court erred in holding him responsible for 150 or more kilograms of cocaine. *See Mariscal*, 326 F. App'x 359. Therefore, in order to now consider the merits of Defendant's argument, Defendant must show "either that (1) he had good cause for his failure to raise such arguments and

3

he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado*, 334 F.3d at 528. Defendant pled guilty, and is neither contesting the validity of that plea nor making any argument about his actual innocence. Defendant also fails to explain why he did not raise the ineffective assistance claim on direct appeal, let alone that he has good cause for not raising the claim (Doc. No. 242). Even were Defendant able to show good cause, he would be unable to show that he would suffer prejudice if he cannot proceed with this claim in his current Motion. This is because Defendant's argument, as described below, is without merit. *See id.* (defendant could not meet prejudice element when his claim would otherwise fail on the merits).

*Merits of Ineffective Assistance of Counsel Claim*

Defendant bases his ineffective assistance of counsel argument on one sentencing factor: "the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). He claims his attorney was ineffective for failing to raise co-defendant disparity as a relevant sentencing factor, thus impacting the procedural and substantive reasonableness of his sentence.

To prevail on an ineffective assistance of counsel claim, both prongs of the *Strickland* test must be met: performance and prejudice. *Harries v. Bell*, 417 F.3d 631, 636 (6th Cir. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 686-692 (1984)). In order to meet the performance requirement, counsel's representation must fall below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688. To meet the prejudice requirement, there must exist a reasonable probability that, absent counsel's unprofessional errors, the results of the proceeding would have been different. *Id.* at 694. When considering the prejudice element, the focus

4

is on whether counsel's errors undermined the reliability of and confidence in the result. *Lockhart v. Fretwell*, 506 U.S. 364 (1993).

Defendant cannot meet the prejudice requirement of *Strickland*, regardless of whether he can meet the performance requirement. This is because Section 3553(a)(6) "concerns *national* disparities between defendants with similar criminal histories convicted of similar criminal conduct -- not disparities between co-defendants." *U.S. v. Carson*, 560 F.3d 566, 586 (6th Cir. 2009) (quoting *U.S. v. Conatser*, 514 F.3d 508, 521 (6th Cir. 2008)) (emphasis in original). Raising disparate sentences with Defendant's co-defendants would have been irrelevant to the Section 3553(a) analysis at sentencing, and therefore without prejudice.

Furthermore, the difference is justified in sentences between Defendant and his co-defendants. There are legitimate reasons why Defendant's co-defendants received lesser sentences than Defendant. Badgett, Rivas, and Cardenas all pled guilty *and* cooperated with the prosecution, unlike Defendant who merely pled guilty. Additionally, Badgett was held responsible for between 50 and 150 kilograms of cocaine, Rivas for between 15 and 50 kilograms, and Cardenas for between 5 to 15 kilograms. This is in contrast to Defendant, who was held responsible for a quantity greater than 150 kilograms. The variance in drug quantities determined the respective criminal offense levels, with Defendant's the highest. With regard to their prior criminal histories, only Badgett had a higher Criminal History Category than Defendant. But Defendant's greater adjusted criminal offense level, enhanced four points for leadership, more than offset the difference between their history categories when the court calculated their sentencing ranges. Defendant also had a prior drug conviction for distributing heroin within 1,000 feet of a school which enhanced his sentence to a mandatory 20-year minimum. Section 3553(a)(6) only addresses the need to avoid *unwarranted* sentence disparities

among defendants with similar records who have been found guilty of similar conduct, not disparities like those found here, which are valid, reasonable, warranted, and based on the different conduct and criminal histories of the defendants. Therefore, the failure of counsel to raise sentencing disparities did not cause prejudice to Defendant. Defendant's ineffective assistance claim would fail on its merits, in addition to being procedurally defaulted.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Vacate, Set Aside, or Correct Sentence is denied.

IT IS SO ORDERED.

   s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

August 26, 2010